Gregg Roberts
43430 E Florida Ave F293
Hemet CA 92544
951-330-4450
gregg@legalsupport-sc.com
Assignee of Record and Judgment Creditor, Pro Se

FILED
SEP 25 2025
CLERK U.S. BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA
BY: _____ Deputy Clerk

UNITED STATES BANKRUPTCY COURT
CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

In re Cammy Mendes,

Debtor

Gregg Roberts,
Judgment Creditor/Plaintiff,

v.

Cammy Mendes
Debtor/Defendant

Main Case #8:25-bk-11756-SC

Chapter 7

Adv. Proc. Case #:_____

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(2) (FRAUD) AND 11 USC 523(A)(6) (WILLFUL AND MALICIOUS INJURY)**

Judge: Hon. Scott Clarkson

## I. JURISDICTION AND VENUE

1. This adversary proceeding arises under 11 U.S.C. §§ 523(a)(2)(A) and 523(a)(6) and is brought pursuant to Fed. R. Bankr. P. 7001(6). It relates to the main bankruptcy case #8:25-bk-11756-SC, filed under Chapter 7 by the Debtor/Defendant.

2. This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(2) (FRAUD) AND 11 USC 523(A)(6) (WILLFUL AND MALICIOUS INJURY)**

1

3. This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

4. Venue is proper in this district under 28 U.S.C. § 1409(a) as the underlying bankruptcy case is pending in this Court.

5. Per FRBP 7008, Roberts does not consent to the entry of final orders and judgments by the Bankruptcy Court.

6. The deadline to file this Complaint is September 29, 2025 per *Form 309A, Notice of Chapter 7 Bankruptcy Case*, p. 2, "9. Deadlines".

## II. PARTIES

7. Plaintiff Gregg Roberts ("Roberts") is a natural person residing in Riverside County, California.

8. Roberts is the Assignee of Record and Judgment Creditor in Orange County Superior Court Case #30-2020-01149885-CU-BC-CJC ("the Judgment"), entered August 9, 2022 in favor of Carual, Inc. ("Carual"), a California corporation.

9. The Judgment was assigned to Roberts by Carual. The acknowledgment of assignment of judgment was filed in the state court case on June 13, 2023. The fact of the assignment was acknowledged in Cammy's Original Petition filed in the main case.

10. Defendant/Debtor Cammy Mendes ("Cammy"[1]) is a 100% shareholder and former owner-operator of 14th Century Playhouse, Inc., a California corporation ("14th Century").

11. Cammy and her husband Raymond Mendes ("Ray") formed 14th Century as a vehicle in which to hold a franchise in a children's private party business, a franchise known as "Pump It Up."

12. The specific Pump It Up franchise location purchased by 14th Century was located at 11966 Jack Benny Dr, Rancho Cucamonga, CA 91739.

---

[1] Roberts refers to the Debtor/Defendant by her first name "Cammy" and her husband by his first name "Ray," to distinguish them. No disrespect is intended thereby.

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(2) (FRAUD) AND 11 USC 523(A)(6) (WILLFUL AND MALICIOUS INJURY)**

13. In connection with the business sale, Carual acted through its principals, Charles Carual and Shannon Carual ("the Caruals"), residents of Riverside County, California.

14. Cammy is the individual debtor in the above-captioned Chapter 7 case pending in the Santa Ana Division of the Central District of California.

15. Cammy was at all relevant times a *de facto* principal of 14th Century.

16. A Facebook page at https://www.facebook.com/cammy.mendes.75/ bears both Tammy's name and a graphic showing "PUMP IT UP" and an "Intro" stating "Book Your Party At Pump It Up! Our Phone Number Is" *[redacted]*.

17. Cammy is also known to use the aliases "Cammy Maddox" and "Cammy Tangreti".

### III. BACKGROUND FACTS

18. On or about August 21, 2018, the Caruals and Cammy and Ray, entered into an agreement to transfer from Carual, Inc., all assets of the Rancho Cucamonga location of Pump It Up to 14th Century, a corporation formed and represented by Cammy and Ray.

19. As part of the transaction, Cammy personally guaranteed the payment obligations of 14th Century.

20. Cammy also facilitated the transaction, took part in business planning and discussions, and was represented to be the party with the time and availability to operate the acquired business.

21. At the time of the transaction, Cammy and Ray made false statements concerning Playhouse's financial condition and ability to perform under the agreement, including misrepresentations about expected revenue and available working capital.

22. In the alternative, 14th Century's Pump It Up business generated revenue sufficient to make installment payments under the agreement, but Cammy intentionally caused or allowed such payments to be withheld, with no legitimate justification.

COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(2) (FRAUD) AND 11 USC 523(A)(6) (WILLFUL AND MALICIOUS INJURY)

23. Cammy and Ray both promised that if the business itself did not generate enough revenue to make the agreed payments, they would get a second mortgage on their house or sell their house in order to generate that revenue and make the payments.

24. On information and belief, Cammy also has a criminal history including multiple convictions, including at least one for forgery, for which she served time.

25. Ray, despite serving as a principal in a business that caters to children, had previously been convicted on two charges as a sex offender.

26. Cammy had actual knowledge of the falsity of the representations described above, as well as the relevance of the omissions described herein, and failed to disclose such information to the Caruals.

27. Cammy's silence and failure to disclose material facts, despite her active participation and insider status, constituted fraud by concealment.

28. Ray's silence and failure to disclose material facts, despite his active participation and insider status, constituted fraud by concealment.

29. In a previous case in this District, #8:21-bk-11394-ES, Ray obtained a discharge with respect to the debt that is the subject of this Complaint. Soon after he filed his original petition, he was dismissed from the state court litigation before entry of judgment. Carual, Inc. did not file an adversary complaint against Ray.

30. Despite his previous discharge in bankruptcy, as a spouse and partner in a business with Cammy, fraud committed by Ray leading to the debt in question would provide good cause to except the debt from discharge in Cammy's case, even if she had not participated in that fraud or known about it.[2]

31. The fact that the Caruals / Carual Inc. might have suffered financial harm for other reasons, including the COVID-19 pandemic, is not a defense to the debtor's fraudulent conduct. Fraud is complete upon inducement; subsequent events are

---

[2] "The United States Supreme Court ... held that the debt incurred because of the fraud of a spouse or partner is imputed to the other partner and therefore is non-dischargeable in that person's bankruptcy under the provisions of 11 U.S.C. § 523(a)(2)(A). *Bartenwerfer v. Buckley*, 143 S. Ct. 665 (2023)." Hon. Meredith Jury, U.S. Bankruptcy Judge, C.D. CA., Ret., Business Law Insolvency Committee, California Lawyers Association, https://calawyers.org/business-law/bartenwerfer-v-buckley-143-s-ct-665-2023/. See the full *Bartenwerfer* opinion at https://www.supremecourt.gov/opinions/22pdf/21-908_n6io.pdf.

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(2) (FRAUD) AND 11 USC 523(A)(6) (WILLFUL AND MALICIOUS INJURY)**

legally irrelevant to dischargeability under 11 U.S.C. § 523(a)(2)(A). See *Cohen v. de la Cruz*, 523 U.S. 213, 218-23 (1998) (holding that debts arising from fraud are nondischargeable in their entirety, regardless of intervening factors or foreseeability of harm).

32. A debt obtained by fraud is nondischargeable even if the creditor would have incurred financial losses through other means (such as COVID-19-related restrictions). The focus under § 523(a)(2)(A) is the debtor's intent and misrepresentations at the time the debt was incurred—not whether the creditor would have ultimately suffered harm due to unrelated or inevitable external events. See *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 356, 360-61 (2016) (clarifying that "actual fraud" includes schemes to hinder repayment, even in the absence of a specific misrepresentation).

33. The inevitability of financial loss is not a defense to fraud. The law punishes the fraudulent inducement itself, not the happenstance that the loss might have occurred anyway.

34. Cammy may not evade accountability by arguing that external circumstances, such as COVID-related business disruptions, would have harmed the Caruals / Carual Inc. regardless. Such arguments are immaterial to a claim under § 523(a)(2), which centers on the debtor's intentional deceit.

35. Even if external circumstances such as COVID-related business disruptions could under the law provide good cause or excuse for the failure to continue making payments for the business franchise as agreed, 14th Century shut down operations at the Pump It Up business no later than January 2020, before there were any COVID-related business disruptions.

36. To the extent that Roberts also seeks a determination of nondischargeability under 11 U.S.C. § 523(a)(6), based on willful and malicious injury, any attempt by Cammy to blame *post hoc* factors such as the pandemic is even more plainly misplaced. The injury at issue was not a byproduct of COVID restrictions, but the result of Cammy's intentional acts.

37. The acts referred to in the preceding paragraph include shutting down the business before any pandemic-related limitations came into effect and converting its assets to the personal use of herself and her family.

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(2) (FRAUD) AND 11 USC 523(A)(6) (WILLFUL AND MALICIOUS INJURY)**

38. The acts referred to two paragraphs above include the failure and refusal to pay the full amount due under the contract, with no just cause or excuse.

39. The acts referred to three paragraphs above include the failure and refusal to keep the commitment to refinance or sell the property at 503 Traverse Drive, in order to make the payments due on of the contract.

40. The timing of events eliminates any claim that the loss was unforeseeable or the result of innocent economic hardship, negligent business performance, or best efforts that nonetheless failed. The debtor's conduct was deliberate, premeditated, and causally linked to the plaintiff's injury.

41. Section 523(a)(6) excludes from discharge those debts arising from acts done with actual intent to cause harm or with knowledge that harm was substantially certain to result. The debtor's conduct satisfies this standard.

## IV. FIRST CLAIM FOR RELIEF: NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(2)(A) — FRAUD

42. Roberts incorporates by reference all preceding paragraphs.

43. Cammy and/or Ray knowingly participated in a fraudulent scheme to induce Plaintiff to enter into a seller-financed sale of its business.

44. Neither Cammy nor Ray intended to keep the commitments that they entered into as part of the contract to purchase the pump it up franchise. Those commitments were made with knowledge of their falsity and/or with reckless disregard for their truth.

45. Carual, Inc., through the Caruals, reasonably relied on the commitments made by Cammy and Ray.

46. Cammy's and/or Ray's omissions and concealment of material facts, coupled with Cammy's role as guarantor and operator, caused the Caruals to reasonably rely on incomplete and misleading representations.

47. Cammy's and/or Ray's conduct constituted actual fraud within the meaning of 11 U.S.C. § 523(a)(2)(A).

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(2) (FRAUD) AND 11 USC 523(A)(6) (WILLFUL AND MALICIOUS INJURY)**

48. As a proximate result of Cammy's and/or Ray's fraud, the Caruals, through their corporation, suffered damages in the amount of $279,884.10, plus costs, interest, and any other amounts that may accrue.

49. Through assignment, Roberts stepped into the shoes of Carual, Inc., and is entitled to bring this action to except the judgment debt from Cammy's discharge.

**V. SECOND CLAIM FOR RELIEF: NONDISCHARGEABILITY UNDER 11 U.S.C. § 523(a)(6) — WILLFUL AND MALICIOUS INJURY**

50. Roberts incorporates by reference all preceding paragraphs.

51. Cammy's actions in causing or allowing the company to divert or withhold payments, despite income in excess of ongoing business expenses, were intentional and done with the objective to injure the Caruals / Carual Inc., or knowing that financial injury to the Caruals / Carual Inc. was substantially certain to result.

52. Cammy's actions in closing the successful business were intentional and done with the objective to injure the Caruals / Carual Inc., or knowing that financial injury to the Caruals / Carual Inc. was substantially certain to result.

53. Cammy's failure and refusal to keep her commitment to refinance or sell the property at 503 Traverse in order to keep up the contractually agreed payments despite any failure of the business to generate sufficient income, were intentional and done with the objective to injure the Caruals / Carual Inc., or knowing that financial injury to the Caruals / Carual Inc. was substantially certain to result.

54. Cammy's actions as described above were without just cause or excuse, and with conscious disregard of the Caruals' and Carual Inc.'s contractual and property rights. See *In re Jercich*, 238 F.3d 1202 (9th Cir. 2001).

55. Such conduct constitutes a willful and malicious injury to the Caruals' / Carual Inc.'s property under 11 U.S.C. § 523(a)(6).

56. With respect to this cause of action also, through assignment, Roberts stepped into the shoes of Carual, Inc., and is entitled to bring this action to except the judgment debt from Cammy's discharge.

---

**COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(2) (FRAUD) AND 11 USC 523(A)(6) (WILLFUL AND MALICIOUS INJURY)**

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

A. For a determination that the debt owed to Roberts under the Judgment in the amount of $279,884.10 plus interest at 10% per annum from August 9, 2022, is nondischargeable under 11 U.S.C. § 523(a)(2)(A);

B. For a determination that this debt is nondischargeable under 11 U.S.C. § 523(a)(6);

C. For interest, costs, and attorneys' fees as permitted by law or contract;

D. For such other and further relief as the Court deems just and proper.

Dated: September 24, 2025
Respectfully submitted,

_____
Gregg Roberts

Assignee of Record / Judgment Creditor

COMPLAINT TO DETERMINE NONDISCHARGEABILITY UNDER 11 USC 523(A)(2) (FRAUD) AND 11 USC 523(A)(6) (WILLFUL AND MALICIOUS INJURY)

8